## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROCARLDO WEITERS**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 16-14945**

**DARRYL VANNOY**                                       **SECTION "N"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Rocarldo Weiters ("Weiters"), is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.[2] On March 26, 2010, Weiters was charged in a bill of information in St. Tammany Parish with armed robbery in violation of La. Rev. Stat. § 14:64 and 14:64.3.[3] Weiters entered a plea of not guilty in the case.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 10, Bill of Information, 3/26/10.

[4]St. Rec. Vol. 1 of 10, Minute Entry, 5/6/10.

The record reflects that Ms. Keith was working the night shift at Grumpy's Texaco ("Grumpys"), a gas station and convenience store located on Robert Road in Slidell, Louisiana, on January 7, 2010.[5] She began preparing the store for closing at approximately 11:00 p.m. A customer waited in the parking lot while Keith went outside to lock up the ice machine. The customer left once Keith was inside the store.

After Keith was inside, a stocky male ran into the store and robbed Keith at gunpoint. Keith described the robber as wearing black gloves, a black hooded jacket with a black balaclava, and a camouflage facemask. The robber carried a "western gun" that had a long handle. Keith opened the cash register and told the robber to take all the money, although there was only about one hundred dollars in the register. The robber grabbed Keith by her neck and shoved her. He repeatedly told Keith he was going to kill her. The robber took the cash and fled on foot in the same direction from which he had originally come. Surveillance cameras recorded the robbery. Law enforcement eventually learned that the masked robber was co-defendant, Gary Gilmore.

Initially, the Slidell Police Department did not have leads in the case.[6] However, Weiters, who was in custody for an unrelated matter, asked to speak to the police about the Grumpy's robbery. Weiters gave his first recorded statement on January 9, 2010. He told police that he was visiting a female friend who lived on Walnut Street on the night of the Grumpy's robbery. Gilmore, who Weiters knew as "Gary," and several others were present. The group teased Gilmore about being one of the dumbest criminals.

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Weiters*, No. 2011 KA 1920, 2012 WL 2159209 (La. App. 1st Cir. 2012); St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, 6/13/12.

[6]Further investigation revealed that the robbery of Grumpy's Texaco gas station involved the petitioner, Weiters, and co-defendants Gary Gilmore and Ionjaleic Cagnolatti.

Weiters told police that Gilmore and a female told the others about Gilmore's failed attempt earlier that night to rob a Slidell convenience store on Thompson Road. Gilmore entered the convenience store wearing a mask, but got scared and ran out of the store before the store clerks noticed him. Gilmore and the female companion then surveilled a second convenience store, but did not rob it. They then drove to Grumpy's convenience store where Gilmore robbed the clerk.

In his statement, Weiters told police that the female companion dropped Gilmore off behind Grumpy's convenience store after the last customer left the store. The female then waited down the street for Gilmore to return. Gilmore ran inside the store, robbed the clerk, and fled back to the waiting vehicle. Gilmore and the female were nervous when the police quickly responded to the store. The female worried that Gilmore would attract police attention as they drove away because he kept turning on the light in the car in order to count the stolen money. Weiters told police that Gilmore showed the group at Walnut Street the camouflage mask he wore as well as the long-barrel revolver he used in the robbery. The group laughed when Gilmore told them he only got about eighty dollars.

The Slidell police determined that Weiters' account of the Grumpy's robbery matched Keith's account. Weiters gave police intimate details that were not released to the public. This concerned the police and they believed that Weiters knew more than he had disclosed in his statement. Slidell Police Detectives Brian Brown and Jeff Theriot executed a search warrant for the Walnut Street residence, but they did not find the gun or any clothing used in the Grumpy's robbery. The occupants of the residence confirmed to police that Gilmore and Weiters had been present at the residence both the night of the Grumpy's robbery as well as the following night. The detectives determined that Gilmore lived in Slidell with his mother, however, Gilmore had ties to the Bay St. Louis/Waveland, Mississippi area.

After the execution of the Walnut Street residence search warrant, on January 21, 2010, Weiters gave a second recorded statement to police. During this statement, he admitted to knowing Gilmore and told police that Gilmore occasionally would call him and ask him for a ride to the Walnut Street residence. Weiters identified Gilmore from a photo line-up.

Weiters told law enforcement that, on the night of the robbery, Gilmore called him and asked for a ride to a female's house. Weiters assumed Gilmore wanted a ride to Walnut Street and agreed to drive him. Weiters first picked up a female companion, whose name he could not recall, and then picked up Gilmore. When Gilmore got in the car, he did not ask to be dropped off at Walnut Street. Rather, he asked to be dropped off at a female's house located off Robert Road behind Grumpy's convenience store. Gilmore directed Weiters to turn off of Robert Road at a traffic light and then to turn into the neighborhood. According to Weiters, he dropped Gilmore off in the yard of the second house on the street.

Weiters claimed that he and his female companion got lost when they attempted to leave through the back of the neighborhood. Weiters eventually turned around and drove back to the front of the neighborhood where they saw Gilmore walking and "brushing his hair." Weiters offered Gilmore a ride. Gilmore accepted and asked to be taken to the Walnut Street residence.

Initially, Gilmore sat in the back seat of the car "just being Gary." When Slidell police cars approached the intersection, Gilmore suddenly dropped down in the seat. Weiters, who was drinking a beer and was concerned that Gilmore's actions might attract the attention of the police, pulled the vehicle over. According to Weiters, Gilmore began "tripping." Gilmore turned on the car light and started counting money. Weiters saw the barrel of a gun as Gilmore attempted to divide the cash. Weiters claimed Gilmore kept repeating to himself that he had to slam the store clerk around because she would not give him the money, and that he had to get to Walnut Street.

4

Gilmore offered Weiters some of the money, but Weiters refused because he wanted no part of the robbery.

According to Weiters, Gilmore acted agitated and kept repeating that he was not going to jail.  Weiters, concerned about Gilmore's state of mind, felt that he had no choice but to take Gilmore to Walnut Street.  When Gilmore exited the car at Walnut Street, he dropped a camouflage mask on the ground.  After dropping off Gilmore, Weiters dropped off his female companion and then went home to his family.  Weiters, his two children, their mother Heather, Heather's mother, and her father, Don Parks, lived in the Parks' home.

Throughout his second recorded interview, Weiters was adamant that he had no knowledge of Gilmore's intent to rob Grumpy's convenience store when he picked up Gilmore from his home. He further claimed he had no knowledge that Gilmore had robbed the store when he stopped to give him a ride at the front of the neighborhood.  Weiters told detectives that he had not seen or talked to his female companion since the night of the Grumpy's robbery.  He, however, told police that, if they could locate her, he was sure she would verify his account of what occurred that night.

In the meantime, Detective Brown had contacted a Mississippi narcotics officer in an attempt to find Gilmore.  The narcotics officer told Brown of a similar style armed robbery of an adult novelty store in Waveland that occurred on January 8, 2010, the night after the Grumpy's robbery.   The narcotics officer suggested Detective Brown contact two Waveland Police Department detectives, Laura Stepro and John Salterelli, who were investigating the Waveland robbery.

Detective Brown learned that the video surveillance cameras recorded the Waveland robbery.  There were two robbers.  One of the robbers wore black clothing, a camouflage mask, and carried a long-barrel gun.  The second robber wore camouflage coveralls and a black balaclava

that had a single large opening for the eyes and nose.  The Waveland detectives drove to Slidell to show Detective Brown the Waveland robbery surveillance video and still photos taken from the video.  A still picture taken from the store's surveillance camera about twenty minutes before the robbery depicted a man wearing a black hooded sweatshirt with a "skull and flames" on the front.  Detective Brown immediately recognized Weiters as the man depicted in that picture.  Brown also recognized Weiters as the robber wearing the camouflage coveralls and balaclava.

The Slidell detectives, in the presence of the Waveland detectives, searched the Weiters' vehicle pursuant to a warrant.  The detectives found the black "skull and flames" hooded sweatshirt and a black balaclava like the one worn by one of the robbers in the Waveland robbery.  They also found co-defendant Ionjaleic Cagnolatti's driver's license in Weiters' vehicle.

Detective Brown, at some point during the investigation, began monitoring and recording Weiters' jail calls.  Brown noted the number Weiters would call when he spoke with his mother, brother, or friends.  In a call to that number, Weiters told a male, who Brown believed to be Weiters' brother, to tell "Ionjaleic" to remove all of his things out of her apartment and to throw them away in her apartment complex's dumpster.

The detectives interviewed Don Parks at his home.  Parks reviewed photographs from the Waveland adult novelty store.  He identified Weiters as the man in the "skull and flames" black hooded sweatshirt and as the robber wearing the camouflage overalls and black balaclava.  Parks also identified the long-barrel gun as his H & R long-barrel pistol, which he explained is a replica of an 1870's long-barrel "cowboy" pistol.  Parks told detectives that he had camouflage coveralls as well as camouflage and black hunting masks like the ones worn by the robbers in the Waveland robbery.  When Parks went to show the detectives his similar hunting gear, he discovered that it

was missing.  He also discovered his H & R long-barrel pistol and a box of ammunition were missing from his locked gun cabinet.

On February 9, 2010, Weiters made a third recorded statement to police in the presence of trial counsel.  He advised that after work on January 7, 2010, he first picked up Cagnolatti and then Gilmore.  The trio drove to Mississippi to case the "joints" that Gilmore was considering robbing.  They devised a plan in which Gilmore, armed with a gun, would rob the store while Weiters and Cagnolatti would act as lookouts.  Weiters would also act as the getaway driver. After deciding not to rob the places, they returned to Slidell.

In Slidell, Gilmore was confident that he could rob the Thompson Road gas station. Weiters and Cagnolatti dropped Gilmore off at the gas station, but as they pulled away, Gilmore ran out of the store without robbing it.  At first, they thought it was funny.  Cagnolatti then decided she wanted to go home.  After Weiters told Gilmore that he would lend him some money, there was no further discussion about robbing a store.

Gilmore asked Weiters to drop him off at a girlfriend's house off Robert Road.  Weiters insisted that he was not aware of Gilmore's plan to rob Grumpy's convenience store when he dropped him off nor was he aware Gilmore had committed the robbery when he later offered him a ride.  Weiters claimed that after he realized Gilmore had robbed Grumpy's convenience store, Weiters and Gilmore had an argument.  Weiters was concerned that he would get arrested if the police stopped the car and found the gun and the stolen money.

On February 20, 2010, Cagnolatti gave a recorded statement to police about the events that occurred on the night of January 7, 2010.  She told the detectives that Gilmore did not ask Weiters to take him to a girlfriend's home near Robert Road.  She explained that they first dropped off Gilmore at the Thompson Road convenience store.  Although she thought it was strange when

Gilmore returned to the vehicle without making a purchase, she said she had no idea of a plan to rob that store.

They then drove to a wooded area behind Grumpy's convenience store. Cagnolatti claimed she had no knowledge about the plan Gilmore and Weiters had to rob the store. She explained that before Gilmore got out of the car, Gilmore told Weiters to signal him by "honking" the horn when he returned to pick him up. Weiters drove down the street, made a U-turn at the end of the street, and drove back to the area where he had left Gilmore. Weiters signaled with the horn. Gilmore ran out of the woods and got back in the car. Cagnolatti claimed she realized what was going on only after Gilmore robbed Grumpy's convenience store.

Cagnolatti denied that Weiters and Gilmore had an argument. She stated that they next drove to the Walnut Street residence. She remained in the car while Weiters and Gilmore went in to the house. After Weiters returned, he and Cagnolatti went to a daiquiri shop. Thereafter, Weiters took her home.

Cagnolatti admitted that she had thrown away items Weiters had left at her apartment, including a pair of camouflage coveralls. Cagnolatti claimed that she had thrown away Weiters' things before she received a phone call from a person who alleged he was Weiters' brother and told her to throw away the items.

Weiters, Gilmore, and Cagnolatti were charged with the Grumpy's armed robbery. Cagnolatti was also charged with accessory after the fact. Gilmore pled guilty.

Weiters was tried by a jury on February 28 through March 2, 2010, and was found guilty of armed robbery.[7] The Trial Court denied Weiters' motion for new trial and motion for judgment

---

[7]St. Rec. Vol. 1 of 7, Trial Minutes, 2/28/11; Trial Minutes, 3/1/11; Trial Minutes, 3/2/11; Trial Transcript, 2/28/11; Trial Transcript 3/1/11; Jury Verdict, 3/2/11; St. Rec. Vol. 2, Trial Transcript (continued), 3/1/11; Trial Transcript, 3/2/11.

of acquittal.[8]  The Court adjudicated Weiters as a second felony offender and sentenced Weiters to forty-four and a half (44 ½) years at hard labor without the benefit of probation or suspension of sentence.[9]

On direct appeal, Weiters, through appellate counsel, argued that he was denied effective assistance of counsel because his trial attorney: (1) failed to object to "other crimes" testimony elicited from Cagnolatti by the prosecution that Weiters had attempted to obstruct justice; (2) failed to object to hearsay testimony that Weiters was involved in the Waveland robbery; and (3) improperly argued, in the presence of the jury, the grounds for an objection concerning testimony of other criminal activity.[10]  In a *pro se* supplemental brief, Weiters argued that (4) the State failed to meet its constitutional burden of proof beyond a reasonable doubt in Weiters' conviction for armed robbery, and (5) the trial court erred in admitting "other crimes" evidence where the State did not prove by clear and convincing evidence that Weiters had committed the Waveland armed robbery.[11]

The Louisiana First Circuit affirmed the conviction and sentence on June 13, 2012, finding no merit in the issues raised.[12]  Weiters' application for rehearing was denied June 27, 2012.[13]

---

[8]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/11/11; Vol. 2 of 7, Sentencing Transcript, p. 443, 4/11/11.

[9]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/11/11; Vol. 2 of 7, Sentencing Transcript, 4/11/11.

[10]St. Rec. Vol. 2 of 7, Appeal Brief, 2011 KA 1920, 12/11/12.

[11]St. Rec. Vol. 3 of 7, *Pro Se* Supplemental Brief, 2011 KA 1920, 2/2/12(dated 1/3012).

[12]*State v. Weiters*, No. 2011 KA 1920, 2012 WL 2159209 (La. App. 1st Cir. 2012); St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, 6/13/12.

[13]St. Rec. Vol. 3 of 7, Application for Rehearing, 2011 KA 1920, 6/27/12; 1st Cir. Order, 2011 KA 1920, 6/27/12.

The Louisiana Supreme Court denied Weiters' related writ application without stated reasons on October 4, 2013.[14]  His conviction was final under federal law ninety (90) days later, on January 2, 2014, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On December 18, 2014, Weiters submitted to the state trial court a counseled application for post-conviction relief and brief in which his counsel raised the following grounds for relief:[15] (1) Weiters was denied effective assistance of counsel in that trial counsel (a) failed to call co-defendant Gary Gilmore to testify; (b) failed to negotiate a plea agreement; (c) failed to object to the trial court's errant jury instructions and propose adequate jury instructions on the law of principals; (d) denied Weiters of his ability to testify in his own defense and failed to advise him of that right; (e) failed to object to improper notice of intent to use "other crimes" evidence; and (f) committed cumulative errors that created a prejudicial effect; (2) he is actually innocent; and (3) improper jury instructions.  Weiters filed a *pro se* motion to supplement the application for post-conviction relief on January 12, 2015.[16]

The Trial Court denied the writ application on April 29, 2015, finding Weiters' claims of ineffective assistance of counsel and improper jury instruction to be without merit and his claim

---

[14]*State ex rel. Weiters v. Louisiana*, 122 So.3d 549 (La. 2013) (mem.); St. Rec. Vol. 4 of 7, La. S. Ct. Order, 2012-KH-1904, (10/4/13); La. S. Ct. Application for Writ, 12 KH 1904, 8/22/12 (dated 8/16/12).

[15]St. Rec. Vol. 5 of 10, Application for Post-Conviction Relief, 12/23/14; Memorandum in Support of Post-Conviction Relief Application, 12/23/14.

[16]St. Rec. Vol 5 of 10, Motion to Supplement, 1/12/15 (dated 12/30/14).

of actual innocence to be an invalid post-conviction relief claim and also without merit.[17]  On

August 10, 2015, the Louisiana First Circuit denied Weiters' writ application without stated

reasons.[18]  Weiters filed an application for supervisory writs with the Louisiana Supreme Court in

September 2015.[19]  In May 2016, Weiters filed a motion to stay, a motion for leave to supplement

his post-conviction application with newly discovered evidence, and a motion enter into the record

the newly discovered evidence.[20]  Weiters included as an exhibit to his motion to enter newly

discovered evidence into the record a transcript of Gilmore's guilty plea on June 4, 2013, in the

Circuit Court of Hancock County, Mississippi, to an armed robbery in Bay St. Louis, several 2012

affidavits from Gilmore, and an affidavit from Gilmore's counsel that was previously submitted

with his application for post-conviction relief.[21]  On November 15, 2016, the Louisiana Supreme

Court denied writs finding that Weiters had failed to show he received ineffective assistance of

counsel under *Strickland*, his claim of actual innocence did not warrant relief, and his improper

jury instruction claim was repetitive under La. Code Crim. P. art. 930.4.[22]

---

[17]St. Rec. Vol 5 of 10, Trial Court Order, 4/28/15.

[18]St. Rec. Vol. 6 of 10, 1st Cir. Order, 15 KW 0828, 8/10/15.

[19]St. Rec. Vol. 7 of 10, La. S. Ct. Writ Application, 15 KH 1699, 9/11/15 (dated 9/9/15).

[20]St. Rec. Vol. 6 of 7, Motion for Leave to Supplement, 15 KH 1699, 5/20/16 (dated 5/19/16); Motion to Enter Newly Discovered Facts and Supporting Documents in to Record, 15 KH 1699, 5/23/16; Vol. 7 of 10, Motion for Stay of Proceedings, 15 KH 1699, 5/20/16 (dated 5/19/16).

[21]St. Rec. Vol. 6 of 10, Motion to Enter Newly Discovered Facts and Supporting Documents in to Record, Exhs., 15 KH 1699, 5/23/16.

[22]*State ex rel. Weiters v. State*, 206 So.3d 178 (La. 2016) (per curiam); Rec. No. 16-2, Exh. 2.

## II.    **Federal Habeas Petition**

On September 23, 2016, the clerk of this Court filed Weiters' petition for federal habeas corpus relief in which he asserts the following grounds for relief[23]: (1) insufficient evidence; (2) inadmissible use of "other crimes" evidence: (3) ineffective assistance of counsel for (a) failure to object to "other crimes" evidence; (b) failure to object to hearsay testimony; (c) arguing a speaking objection; (d) failure to call co-defendant Gilmore to testify; (e) failure to negotiate a plea agreement; (f) denial of the right to testify; (g) failure to object to an improper notice of "other crimes" evidence; (h) failure to object to jury instructions; and (i) commission of cumulative errors; (4) improper jury instruction; and (5) actual innocence.

The State filed a response in opposition to the petition asserting that Weiters timely filed his federal petition and, after the federal petition was filed, completed exhaustion of state court review of these claims.[24]   The State also asserts that one claim is in procedural default and the remaining claims can be dismissed as meritless or not cognizable on federal habeas review.

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on September 16, 2016.[26]   The threshold questions on habeas review under the

---

[23]Rec. Doc. No. 1, pp. 3-6

[24]Rec. Doc. No. 16.

[25]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under

amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes Weiters timely filed his federal petition. The State contends that Weiters' fourth claim is in procedural default. The States argues the remaining claims can be dismissed as meritless or not cognizable on federal habeas review.[27]

## IV.   <u>Procedural Default Claim No. 4</u>

The State recognizes that one issue raised by Weiters is in procedural default, having been dismissed by the Louisiana Supreme Court as procedurally barred from review. This claim is improper jury instruction.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review

---

this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Weiters signed and dated the petition on September 16, 2016, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to a federal court.

[27]Rec. Doc. No. 16.

of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

Weiters raised his improper jury instruction claim for the first time in his petition for post-conviction relief. The Trial Court found that Weiters' claim was meritless as the instructions clearly explained the burden of proof and criminal intent as well as the jury's duties. The Louisiana Supreme Court found Weiters was procedurally barred from raising the claim under La. Code Crim. P. art 930.4 as "repetitive."[28]

The word "repetitive" is a reference to language in La. Code Crim. P. art. 930.4 which addresses the grounds for dismissal of post-conviction applications in Louisiana. While the Louisiana Supreme Court did not refer to a specific paragraph of art. 930.4, the jury instruction claim was not raised on direct appeal. Thus, art. 903.4(A) could not be the basis for dismissing the claim. The post-conviction application was not successive, and, as such, neither art. 930(D) nor art. 930(E) could be the basis of the dismissal.

Art. 930.4(B) provides that "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief." Also, under art. 930.4(C), "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."

The Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of Weiters' claim of improper jury instruction on federal habeas

---

[28]La. Code Crim. P. art. 930.4 provides for the dismissal of a post-conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the application is a successive application which raises claims which are not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

corpus review.  As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

### A.    Independent State Grounds

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338 (citation omitted). The Louisiana Supreme Court approved the denial of relief based on a state statutory rule to bar relief of Weiters' claims citing La. Code Crim. P. art 930.4.

The Louisiana Supreme Court's ruling was based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review. This ruling was therefore independent of federal law and relied strictly on state procedural requirements.  *See Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) (Art. 930.4); *Thomas v. Cain,* Civ. Act. No. 11-2103*, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (*Lemelle, J.) (same); *Washington v. Cain,* Civ. Act. No. 98-584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (Duplantier, J.) (same).

### B.    Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Walker v. Martin*, 562 U.S. 307, 316-17 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established and 'regularly followed,'– even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Beard*, 558 U.S. at 60-61.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas

court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999).  Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair.  *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAfee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, Civ. Act. No. 00CV684–Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, Civ. Act. No. 99–0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (finding La. Code  Crim. P. art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, Civ. Act. No. 97–1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (finding art. 930.8 was not adequate to bar review because it was misapplied).  It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy.  *Lee v. Cain*, No. Civ. Act. No. 03–

2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in the case of this issue, the bar must stand.

As noted above, the Louisiana Supreme Court barred Weiters' claim four pursuant to La. Code Crim. P. art. 930.4. The record supports the imposition of this procedural bar. Weiters does not and cannot contest that this barred claim was not presented in earlier proceedings when it could have been.

The federal courts have held that the bars imposed under Article 930.4(B) and (C) are adequate to foreclose federal review of a claim barred thereunder by the state courts. *Cf. Thomas,* 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (finding Article 930.4(B) independent and adequate to bar claim challenging expert witness testimony); *Simmons v. Cain,* Civ. Act. No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, Civ. Act. No. 05-0929, 2006 WL 5507856, at *8 (E.D. La. Oct. 17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds, Monroe v. Cain*, Civ. Act. No. 05-0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

For the foregoing reasons, the procedural bar imposed on Weiters' argument regarding the improper jury instructions (claim four) is supported by the record and is adequate to foreclose review by this federal court. Because the Louisiana Supreme Court's decision rested on independent and adequate state rules of procedural default, this Court will not review this claim unless Weiters has established one of the following exceptions.

### C.     <u>Cause and Prejudice</u>

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos*, 61 F.3d at 338–39 (citing *Harris*, 489 U.S. at 262); *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Weiters has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court. The Court's review of the record does not support a finding that any factor external to the defense prevented Weiters from raising the claim in a procedurally proper manner. In connection with his claim that counsel's ineffective assistance contributed to the default, as is further discussed in this report, that claim is without merit and does not stand as cause for the default. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged

any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir. 1977)).

Weiters' defaulted argument is therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[29]

### D.    <u>Fundamental Miscarriage of Justice</u>

Weiters may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, Petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray,* 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, Petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

The actual innocence standard encompasses three principles. First, a "credible [actual innocence] claim requires new reliable evidence—whether it be exculpatory scientific evidence,

---

[29]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte*. *Id.*

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)). Second, the court's analysis is not limited to the new evidence presented by a petitioner in support of his actual innocence claim. *Id*. "The habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that govern at trial." *Id*. at 538 (quoting *Schlup*, 513 U.S. at 327). In doing so, the court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 531-32. Third, the "demanding" actual innocence standard "permits review only in the extraordinary case." *Id*. (citation omitted); *see also Fairman v. Anderso*n, 188 F.3d 635, 644 (5th Cir. 1999) ("[O]ur precedent confirms that the mountain . . . a petitioner must scale in order to prove a fundamental miscarriage claim is daunting indeed.").

In evaluating the reliability of the new evidence, the court may "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332. After considering all the evidence, the habeas court makes a "'probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 329).

Weiters attempts to make a colorable showing of factual innocence by presenting several affidavits from Gilmore from February 2011 and September, October, and November 2012. Gilmore states in the affidavits: that he committed the Grumpy's robbery at the spur of the moment; that Weiters had no knowledge of Gilmore's intent to commit the robbery; and that Gilmore personally secured the firearm and concealed it from Weiters.[30] Gilmore further states that he lied

---

[30]St. Rec. Vol 5 of 7, Application for Post-Conviction Relief, Exh., 12/23/14; Rec. Doc. 1, pp. 15-17.

to Mississippi detectives in 2010 when he implicated Weiters and explains that he implicated Weiters out of spite and in order to get leniency in his own case.[31]  Gilmore also states that Weiters did not commit any crime in Mississippi.[32]

Weiters also submitted the 2014 affidavit of Gilmore's Mississippi attorney, Brian Alexander, in which Alexander states that Gilmore repeatedly told him that Gilmore was solely responsible for the Grumpy's robbery and that Weiters had no knowledge of Gilmore's intent to commit the robbery or that Gilmore possessed the gun.[33]  Alexander further states that Gilmore told him that had he been called to testify at Weiters' trial, he would have truthfully testified to same.[34]  Finally, he states Gilmore told him he was not required or allowed to testify at his plea hearing about the Grumpy's robbery or he would have exculpated Weiters at that time.[35]

Weiters has not met the rigorous burden of proof imposed under the actual innocence exception based on the foregoing newly proffered evidence.  Alexander was not an eyewitness to either robbery.  He has no firsthand knowledge of the events leading up to the robberies or the robberies themselves.  Rather, his affidavit is based solely upon what Gilmore told him during his representation of Gilmore in a Mississippi case.

Gilmore's affidavits are not *reliable* new evidence establishing Weiters' innocence.  First, Gilmore's affidavits directly contradict his original statement to Mississippi police that Weiters was the second perpetrator in the Waveland robbery.  The affidavits also contradict a statement Gilmore made in court that Weiters made him commit the robbery.[36]  Second, Gilmore is a

---

[31]Rec. Doc. 1, p. 17.

[32]Rec. Doc. 1, pp. 18-19.

[33]St. Rec. Vol 5 of 7, Application for Post-Conviction Relief, Exh. 2, 12/23/14.

[34]*Id.*

[35]*Id.*

[36]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 305, ll. 5-23, 3/1/11.

convicted felon and an admitted drug user[37], which further calls his credibility into issue.  Third, Gilmore did not execute the affidavits until after he had pled guilty and been sentenced in the Grumpy's robbery.  Having already been convicted and sentenced, the truthfulness of his affidavit is further questionable as Gilmore now has nothing to lose by lying to exonerate Weiters.  *Drew v. Scott*, 28 F.3d 460, 463 (5th Cir. 1994) (rejecting co-defendant's post-sentencing affidavit that he acted alone in committing a crime because codefendant "had nothing whatsoever to lose by incriminating himself after receiving a 60–year sentence."); *Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004) ("postconviction statements by codefendants are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences."); *Malik v. Ducharme*, 972 F.2d 1340 (Table), 1992 WL 192394, at *2 (9th Cir. 1992) (petitioner's speculation pertaining to testimony of uncalled witnesses and affidavit from co-defendant in which he asserted defendant was innocent was inadequate to show factual innocence); *Given v Kelly*, Civ. Act. No. 12-365, 2013 WL 1136739, at *8 (W.D. Pa. Mar. 18, 2013) (petitioner did not meet burden of showing no reasonable juror would have found him guilty where affidavit from co-defendant purporting to exonerate petitioner was of questionable credibility given it was executed by the co-defendant after he had been sentenced and had nothing to lose).

Finally, Gilmore's inherently unreliable affidavits and Alexander's affidavit are not sufficient, when considered in light of all of the evidence presented at trial, to show that it is more likely than not that no reasonable juror would have convicted Weiters.  Weiters told police that Gilmore asked him for a ride the day of the Waveland robbery, but that Weiters refused and never

---

[37]St. Rec. Vol. 6 of 7, Motion to Enter Newly Discovered Facts and Supporting Documents in to Record, Exh. E.1, pp. 12-17, 15 KH 1699, 6/1/16.

left Slidell.[38]  However, both Cagnolatti and Parks identified Weiters as the man in the Waveland robbery photographs wearing camouflage coveralls.[39]  Parks identified the coveralls and other hunting gear worn during the robberies as belonging to him and further testified that the gear was missing from his home that he shared with Weiters.[40]  Cagnollati testified that she threw out camouflaged coveralls that Weiters had left at her home.[41]  Parks further identified the gun shown in the photographs of both robberies as the firearm missing from his locked gun cabinet.[42]  Weiters made a recorded statement to police admitting that he and Gilmore had been casing places to rob immediately before the Grumpy's robbery and admitted to dropping Gilmore off near the store.[43] Cagnolatti testified that Weiters and Gilmore seemed to know what they were doing on the night of the Grumpys' robbery and that Gilmore told Weiters to honk when he returned to pick up Gilmore.[44]  She testified that upon his return to the vehicle, Gilmore stated that he had not gotten much money.[45]

Weiters has not carried his burden of establishing that it would be a fundamental miscarriage of justice to fail to consider his improper jury instruction claim.  He, therefore, has failed to overcome the procedural bar to his claims.  The claim of improper jury instructions is procedurally barred and should be dismissed with prejudice.

---

[38]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 276, 3/1/11; Trial Transcript, p. 345, 3/2/11.

[39]St. Rec. Vol. 2 of 7, Trial Transcript (continued), pp. 322, 374, 3/1/11.

[40]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 364, 369, 371-75, 378-79, 3/2/11.

[41]St. Rec. Vol. 2 of 7, Trial Transcript (continued), pp. 314 -15, 326, 3/1/11.

[42]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 370-71, 373, 378-79, 3/2/11.

[43]*Id*., at pp. 343, 356-57.

[44]St. Rec. Vol. 2 of 7, Trial Transcript (continued), pp. 319, 324, 3/1/11.

[45]*Id*., at pp. 319, 325.

## V.    **Standards for a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly

established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record before the state court that

adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    <u>Sufficiency of the Evidence (Claim No. 1.)</u>

Weiters contends that the evidence was insufficient to convict him of being a principal to

armed robbery.  He argues that the State failed to prove beyond a reasonable doubt that he had

knowledge of Gilmore's plan to rob Grumpy's convenience store or that he aided him in planning

the robbery.  He contends that at most he could only be found guilty of accessory after the fact.

The State argues that the evidence that was presented at trial was sufficient to establish each

element of the crime charged and denial of relief by the state courts' was proper under federal law.

Weiters, in his *pro se* brief, raised the sufficiency of the evidence on direct appeal to the

Louisiana First Circuit.  Relying on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979)

and related state law, the Court resolved that the evidence was sufficient to establish that the defendant

was guilty of armed robbery.[46]  This was the last reasoned opinion on the issue.  *See Ylst v.*

*Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether

it is based on procedural default or the merits of a federal claim, the federal court will presume that the

state court has relied upon the same grounds as the last reasoned state court opinion).

Claims of insufficient evidence present a mixed question of law and fact.  *Perez v. Cain*, 529

F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must

therefore give deference to the state court's findings unless the decision was contrary to, or involved

---

[46]St. Rec. Vol. 2 of 7, *Weiters*, No. 2011 KA 1920, 2012 WL 2159209, at *11-13; St. Rec. Vol. 2 of 7, 1st
Cir. Opinion, 2011 KA 1920, pp. 19-24, 6/13/12.

an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review.  *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent Weiters relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . .. Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt."  *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d

204, 209 (La. App. 4th Cir. 1997).  The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial.").  The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' " *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Weiters was charged and convicted with violation of La. Rev. Stat. § 14:64, which defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. § 14:64(A); *State v. Thomas*, 13 So. 3d 603, 606 (La. App. 5th Cir. 2009). Under Louisiana's law of principals, persons are guilty if they are "concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. Rev. Stat. § 14:24. The defendant need not personally have held a weapon to be guilty as a principal of armed robbery. *State v. Dominick*, 354 So. 2d 1316, 1320 (La. 1978); *State v. Brown*, 173 So. 3d 1262, 1275 (La. App. 5th Cir. 2015), *writ denied*, 207 So. 3d 403 (La. 2017); *State v. Wells*, 522 So. 2d 1163, 1165 (La. App. 4th Cir. 1988). He need not actually have performed the taking. *Brown*, 173 So. 3d at 1275. A defendant that acts as a get-away car driver can be found guilty as a principal to armed robbery. *State v. Antoine*, 444 So. 2d 334, 337-38 (La. App. 1st Cir. 1983). Not all principals are automatically guilty of the same grade of an offense; a principal instead may be charged with and convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. *State v. Tate*, 851 So. 2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La.1987)). It is not enough that the defendant's accomplice had the requisite intent; the State must prove that the defendant had the required mental element. *Id.*, 851 So.2d at 930.

Under Louisiana law, armed robbery is a general intent crime. *State v. Smith*, 23 So. 3d 291, 297-98 (La. 2009); *State v. Payne*, 540 So. 2d 520, 523-524 (La. App. 1st Cir. 1989). "General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. Rev. Stat. § 14:10(2).

In Louisiana law, general intent "is shown by the very doing of the acts which have been declared criminal." *State v. Oliphant*, 113 So.3d 165, 172 (La. 2013) (citation omitted).

To convict Weiters of armed robbery, the State was required to prove beyond a reasonable doubt all elements of the statute. *State v. Garner*, 532 So. 2d 429, 434 (La. App. 1st Cir. 1988). Under the Louisiana criminal code, anything of value "must be given the broadest possible construction, including any conceivable thing of the slightest value." La. Rev. Stat. § 14:2(A)(2). A dangerous weapon is defined broadly as "any gas, liquid, or other substance or instrumentality, which in the manner used, is calculated or likely to produce death or great bodily harm." *Id*. § 14:2(A)(3).

In addition to proving the elements of the crime, the State was also required to prove the defendant's identity as the perpetrator. *State v. Davis*, 822 So. 2d 161, 163 (La. App. 1st Cir. 2002). In doing so, the "State is required to negate any reasonable probability of misidentification in order to carry its burden of proof." *Id*. at 163 (citing *State v. Johnson*, 888 So. 2d 886, 888 (La. App. 1st Cir. 2001). Louisiana courts have held that a positive identification by one witness is enough to support a conviction of armed robbery. *State v. Dunn*, 208 So. 3d 954, 958 (La. App. 1st Cir. 2016). Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination. *State v. Marshall*, 943 So. 2d 362, 369 (La. App. 1st Cir. 2006).

The record supports the findings made by the state appellate court in the last reasoned opinion on the issue. The testimony at trial established that Keith was closing up Grumpy's convenience store when a man dressed in black and wearing a camouflage mask and a black hood came in and took cash

by intimidation while armed with a western style gun.[47]  Surveillance cameras captured the events, and

the video as well as still pictures were shown to the jury.[48]

Cagnolatti testified that when Weiters picked her up on January 7, 2010, Gilmore was already

in the vehicle.[49]  According to Cagnolatti, Gilmore never asked Weiters to drop him off at a female's

house behind Grumpy's store.[50]  She testified that while the men did not discuss much, they seemed to

know where they were going and what they were doing.[51]  Cagnolatti explained that she thought it was

strange when they dropped Gilmore off at the Thompson Road gas station, drove away and then picked

him up.[52]  She testified that Weiters next dropped off Gilmore on North Boulevard and Gilmore told

him to honk the horn when he returned.[53]  Weiters drove a little further down North Boulevard, made

a U-turn, and, after he honked the horn, Gilmore returned to the vehicle.[54]  At that point, Cagnolatti

knew something had happened because Gilmore made a statement about getting some money but not

much.[55]  According to Cagnolatti, Gilmore did not threaten Weiters, show his gun or make Weiters

take him to Walnut Street.[56]  Cagnolatti identified Weiters from a photograph of the Waveland

---

[47]St. Rec. Vol. 2 of 7, Trial Transcript (continued), pp. 242-256, 3/1/11.

[48]*Id.*, at pp. 249-253.

[49]*Id.*, at pp. 312-313, 323.

[50]*Id.*, at pp. 319, 328.

[51]*Id.*, at pp. 327.

[52]*Id.*, at pp. 317-18.

[53]*Id.*, at pp. 318-19.

[54]*Id.*, at p. 319.

[55]*Id.*, at pp. 322, 325.

[56]*Id.*, at p. 320.

robbery.[57]  She testified that, after the robbery, she got rid of two jackets, coveralls, and a camouflaged jumpsuit Weiters had left at her apartment and that the coveralls were similar to the ones worn by one of the robbers in the Waveland robbery.[58]

Parks testified that Weiters lived with him.[59]  Parks identified the gun and a mask used in the Grumpy's robbery as belonging to him.[60]  He explained that the gun was a "cowboy gun" and a "western pistol with a long barrel."[61]  He explained that when he checked his gun cabinet, the key had been moved, and the gun, a box of ammunition, and some of his hunting masks were missing.[62]  A pair of Parks' camouflaged coveralls was also missing from the garage.[63]  Parks identified Weiters from the video and still photographs from the Waveland robbery.[64]  He further identified as his a ski mask, coveralls, and gun from a Waveland robbery photograph.[65]

Additionally, in his recorded statements to police, Weiters admitted that he and Gilmore had been casing places to rob the evening of the Grumpy's robbery and that he dropped Gilmore off near the convenience store and picked him up a short time later.[66]

---

[57]*Id*., at pp. 318-19.

[58]*Id*., at pp. 314-315, 326.

[59]St. Rec. Vol 2 of 7, Trial Transcript, p. 364, 3/2/11.

[60]*Id*., at pp. 369, 374, 379.

[61]*Id*., at pp. 378-79.

[62]*Id*., at pp. 370-72.

[63]*Id*., at p. 372.

[64]*Id*., at p. 373.

[65]*Id*., at p. 374.

[66]*Id*., at pp. 343, 456-57.

The matters now urged by Weiters relate to the weight of the evidence and involve matters that were not in evidence before the trial court. *Jackson* limits this Court's review to the evidence before the trier of fact and does not allow the Court to reassess the weight and credibility of the evidence. *See Jackson*, 443 U.S. at 319 (finding that such matters are left to the factfinder). The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Jackson*. Weiters is not entitled to relief on this issue.

## VII.    **"Other Crimes" Evidence (Claim No. 2)**

Weiters claims that the trial court erred in admitting "other crimes" evidence without the State's proof of clear and convincing evidence that he committed the Waveland robbery. He also argues that the State failed to show that the probative value of the evidence outweighed the prejudicial effect the admittance had on Weiters. The States argues that Weiters' claim is based on state law and is not cognizable on federal habeas review.

Weiters raised his claim on direct appeal in his *pro se* brief.[67] The Louisiana First Circuit found that the State had met its burden of proving that Weiters was a co-perpetrator of the Waveland robbery.[68] It further found that the probative value of the other crimes evidence of the Waveland robbery outweighed its prejudicial effect.[69] It explained that the evidence was used to show proof of Weiters' intent in the Grumpy's robbery and to prove that his presence and involvement was not by mistake or accident.[70] The Court also noted that the trial court gave a

---

[67]St. Rec. Vol. 3 of 7, *Pro Se* Supplemental Brief, 2011-KA-1920, 2/2/12 (dated 1/30/12).

[68]St. Rec. Vol. 2 of 7, *Weiters*, No. 2011 KA 1920, 2012 WL 2159209, at *15; St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, p. 26, 6/13/12.

[69]St. Rec. Vol. 2 of 7, *Weiters*, No. 2011 KA 1920, 2012 WL 2159209, at *15; St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, pp. 26-27, 6/13/12.

[70]St. Rec. Vol. 2 of 7, *Weiters*, No. 2011 KA 1920, 2012 WL 2159209, at *15; St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, pp. 19-24, 6/13/12.

limiting instruction regarding the use of the evidence.[71]  It therefore found that the trial court did

not err in admitting the evidence.[72]  This was the last reasoned opinion on the issue.

To the extent that Weiters argues that the evidence was admitted in violation of Louisiana

law, that claim is not cognizable on federal habeas review.  *See Swarthout v. Cooke*, 562 U.S. 216,

219 (2011) (federal habeas review does not lie for errors of state law).  Habeas corpus review is

limited to questions of constitutional dimension, and federal courts generally do not review the

admissibility of evidence under state law.  *Estelle*, 502 U.S. at 67–68; *Gonzales v. Thaler*, 643

F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.1992).

Thus, federal courts do not sit to review the propriety of state court evidentiary rulings,

unless the proceedings violate due process in such a way that the violation renders the criminal

proceeding fundamentally unfair.  *Lisenba v. People of the State of California*, 214 U.S. 219, 236–

37 (1941).  Federal habeas review on such matters is proper only to determine whether a state trial

judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit

constitutional right.  *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991).  The Due Process Clause

provides a mechanism for relief when evidence is wrongly admitted in a state court criminal

proceeding, but only if that evidence is so unduly prejudicial that it renders the trial fundamentally

unfair.  *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005).  The evidence must have had a

substantial, injurious effect or influence in determining the jury's verdict such that it rendered the

---

[71]St. Rec. Vol. 2 of 7, *Weiters*, No. 2011 KA 1920, 2012 WL 2159209, at *15; St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, pp. 26-27, 6/13/12.

[72]St. Rec. Vol. 2 of 7, *Weiters*, No. 2011 KA 1920, 2012 WL 2159209, at *15; St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, p. 27, 6/13/12.

trial fundamentally unfair. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007). Admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial." *Gonzales*, 643 F.3d at 430 (quotation omitted).

Under these standards, to establish a fundamentally unfair trial, a petitioner must show a reasonable probability that the verdict might have been different had the trial been properly conducted. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir. 1985). A habeas petitioner must show that "the trial court's error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

This claim presents a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997) (admissibility of evidence under the Due Process Clause is a mixed question of law and fact). Thus, the court must determine whether the denial of relief by the state courts was contrary to or an unreasonable application of federal law. Under these rigorous standards, Weiters has failed to meet his burden regarding the trial court's admission of the evidence of the Waveland robbery.

This Court's review of the record confirms that the probative value of the Waveland robbery evidence outweighed the prejudicial effect. Weiters' defense was that he was not aware of Gilmore's plan to rob Grumpy's convenience store. The evidence of the Waveland robbery was offered to rebut Weiters' defense and to show proof of his intent and not mistake or accident. The Waveland robbery was committed the day after the Grumpy's robbery. Weiters was identified as

being in the Waveland store shortly before the robbery.[73]  A video showed his vehicle parked

across the street from the store.[74]  Detective Brown, Detective Theriot, Parks and Cagnolatti all

identified Weiters as being one of the perpetrators from one of the surveillance photographs of the

Waveland robbery.[75]  Parks identified the face masks and coveralls worn by the robbers as his

missing hunting gear and the gun as his missing firearm.[76]  Finally, Cagnolatti admitted the

coveralls she threw away looked like the ones one of the perpetrators was wearing in the

photograph of the Waveland robbery.[77]

There is no indication from the state court record that the evidence of the Waveland robbery

misled the jury into an improper verdict.  Nor it cannot be said that the evidence played a crucial,

critical and highly significant role in Weiters' conviction.  The Trial Court instructed the jury that

the sole purpose for which the evidence could be considered was whether it intended to show

Weiters possessed the requisite specific intent to commit a criminal act on a later occasion or to

show motive, opportunity, preparation, plan, or absence of mistake or accident.[78]  It further

cautioned the jury that it could not find Weiters guilty of the offense charged merely because he

may have committed another offense.[79]  Further, even aside from the "other crimes" evidence,

---

[73]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 322, 3/1/11; Trial Transcript, pp. 345-47, 373, 3/2/11

.

[74]St. Rec. Vol. 2 of 7, Trial Transcript (continued), pp. 304, 306, 308, 3/1/11.

.

[75]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 271, 322, 3/1/11; Trial Transcript, pp. 345, 374, 3/2/11.

[76]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 369, 373-75, 378-79 3/2/11.

[77]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 315, 3/1/11.

.

[78]St. Rec. Vol. 1 of 7, Jury Instructions, p. 4, 3/2/11; Vol. 2 of 7, Trial Transcript, p. 412, 3/2/11.

[79]St. Rec. Vol. 1 of 7, Jury Instructions, p. 4, 3/2/11; Vol. 2 of 7, Trial Transcript, p. 412, 3/2/11.

there was compelling evidence of Weiters' guilt of the Grumpy's armed robbery including: (1) Weiters' third recorded statement that he knew Gilmore was armed and that they had spent time casing stores immediately prior to the Grumpy's robbery; (2) Cagnolatti's testimony that Weiters and Gilmore seemed to know where they were going and what they were doing and that Gilmore told Weiters to honk when he returned to pick up Gilmore; (3) Parks' testimony that his gun and hunting masks were missing from his home where Weiters also resided; and (4) Parks' identification as his of the gun and mask used in the Grumpy's robbery.

Under these circumstances, the introduction into evidence of evidence of the Waveland robbery did not result in a denial of fundamental fairness. The state courts' denial of relief on this claim was not contrary to nor an unreasonable application of United States Supreme Court precedent. Weiters is not entitled to relief as to this claim.

## VIII.  <u>Ineffective Assistance of Counsel (Claim No. 3)</u>

Weiters alleges that he received ineffective assistance of counsel. He claims his trial counsel: (a) failed to object to testimony of Cagnolatti or seek a mistrial; (b) lodged an objection in front of the jury that allowed it to hear that Weiters had committed other offenses; (c) failed to object to the testimony of Detective Laura Stepro that Gilmore implicated Weiters in the Waveland robbery; (d) failed to call co-defendant Gary Gilmore to testify; (e) failed to negotiate a plea agreement; (f) failed to object to the errant jury instructions and propose adequate jury instructions on the law of principals; (g) denied Weiters of his ability to testify in his own defense and failed to advise him of that right; (h) failed to object to improper notice of intent to use other crimes evidence; and (i) committed errors that, when considered together, created cumulative prejudice.

Weiters asserted these arguments on direct appeal and/or in his state application for post-conviction relief.  Upon its review pursuant to the standards set forth in *Strickland*, 466 U.S. at 668 and related state case law, on direct appeal, the Louisiana First Circuit determined Weiters' claims related to Cagnolatti and Stepro's testimony and the speaking objection before the jury were without merit because Weiters failed to show that there was a reasonable probability that, but for counsel's alleged mistakes, the results of the proceeding would have been different.[80]  This was the last reasoned opinion on those issues.

With regard to Weiters' remaining claims of ineffective assistance of counsel, the Trial Court found that Weiters failed to meet either of the *Strickland* requirements.[81]  The Louisiana First Circuit found no error in that ruling.[82]  In the last reasoned opinion, the Louisiana Supreme Court also concluded that Weiters failed to demonstrate that he received ineffective assistance of counsel at trial under the *Strickland* standards.[83]

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel when a defendant enters a plea

---

[80]*Weiters*, No. 2011 KA 1920, 2012 WL 21592092, at *7-10; St. Rec. Vol. 2 of 7, 1st Cir. Opinion, 2011 KA 1920, p. 14-19, 6/13/12.

[81]St. Rec. Vol. 5 of 10, Trial Court Order, pp. 1-2, 4/29/15.

[82]St. Rec. Vol. 3 of 10, 1st Cir. Order, 15 KW 0828, 5/12/15.

[83]*State ex rel. Weiters*, 206 So. 3d at 179; Rec. No., 16-2, La. S. Ct. Order, 2015-KH-1699, p. 3, 11/15/16.

of guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan*, 980 F.2d at 296. In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland,* 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th

Cir. 2004) (counsel's " 'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.' ") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court

went on to recognize the high level of deference owed to a state court's findings under *Strickland*

in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). This Court

must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall

"within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore*

*v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly

proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309

(5th Cir. 2008); *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas

court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v.*

*Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the

circumstances are objectively reasonable and do not amount to unconstitutionally deficient

performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120

F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

In the instant case, Weiters fails to establish that his counsel's performance was objectively

unreasonable or deficient under the circumstances of his case or that there is a reasonable probability that, but for his counsel's actions, the result of the proceedings would have been different.

### A.    Failure to Object to Cagnolatti's Testimony

Weiters claims that his counsel rendered ineffective assistance in failing to object to or seek a mistrial based upon the State eliciting testimony from Cagnolatti that Weiters had attempted to obstruct justice. The States responds that trial counsel's performance was not deficient and the state courts' prejudice determination was not unreasonable.

During the State's direct examination of Cagnolatti, it elicited testimony from her that she received a phone call from someone who claimed to be Weiters' brother.[84] The person told her to get rid of everything in her apartment that belonged to Weiters.[85] Cagnolatti testified that she had already gotten rid of Weiters' things prior to receiving the phone call.[86] Weiters argues that because Cagnolatti did not know his brother, the call to her had to have been at Weiters' suggestion. He therefore contends that the testimony implicated him as a principal to obstruction of justice.

Weiters raised this claim on direct appeal. The Louisiana First Circuit found that the line of questioning by the State arguably could have been construed as soliciting inadmissible "other crimes" evidence, but that Weiters failed to show prejudice as a result of his trial counsel's

---

[84] St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 314, 3/1/11.

[85] *Id.*

[86] *Id.*, at pp. 314, 326.

conduct.[87]   The Court explained that given the amount of evidence that linked Weiters to the robberies, he could not show a reasonable probability that the results of the proceedings would have been different.[88]   This was the last reasoned opinion on the issue.

The evidence of the phone call to Cagnolatti was not improperly introduced to portray that Weiters was a bad person or to show obstruction of justice.  But rather, the evidence was admissible as consciousness of evidence of guilt.  *State v. Lewis*, 125 So. 3d 1252, 1263 (La. App. 4th Cir. 2013) (recorded jail calls documenting concealment and destruction of evidence was relevant and admissible to show consciousness of guilt); *see also State v. Murray*, 827 So. 2d 488, 506 (La. App. 2d Cir. 2002) (evidence that defendant hid gun and burned victim's clothing was admissible to show consciousness of guilt).  As the evidence was admissible, any objection to the evidence by Weiters' counsel would have been meritless.  Counsel does not act deficiently when he fails to urge a meritless or baseless position.  *See Clark*, 673 F.3d at 429 (quoting *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); *Wood,* 503 F.3d at 413 (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.' ") (quoting *Clark v. Collin*s, 19 F.3d 959, 966 (5th Cir. 1994)); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim

---

[87]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *10; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 14-15, 6/13/12.

[88]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *8; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 14-16, 6/13/12.

because the result of the proceeding would not have been different had the attorney raised the issue.").

Even if the evidence were inadmissible, Weiters fails to satisfy the second prong of *Strickland*. Given the amount of evidence presented by the State, Weiters has failed to show that there is a reasonable probability that the jury would have reached an alternate conclusion. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*. Weiters is not entitled to relief on this claim.

### B. Basis of Objection in Jury's Presence

Weiters next claims that his trial counsel rendered deficient performance in the manner in which he argued an objection. Specifically, in objecting to a re-direct question asked of Cagnolatti by the prosecution, defense counsel gave the basis of the objection in the jury's presence. Weiters argues that counsel "virtually announced to the jury that Mr. Weiters had committed other offenses that were being concealed from the jury."[89] The State argues that the state courts' rejection of the claim was not unreasonable.

On re-direct, the prosecution asked Cagnolatti whether Weiters "ever ma[de] statements to you about hitting a lick or trying to sound like he --."[90] Weiters' trial counsel objected and stated, "This is talking about other offenses that we have already had hearings for. This is something

---

[89] St. Rec. Vol. 2 of 7, Appeal Brief, p. 5, 11/28/11.

[90] St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 328, ll. 22-23, 3/1/11.

extraneous."[91]  The Trial Court sustained the objection, and the prosecution moved on to a different line of questioning.[92]

On direct appeal, the Louisiana First Circuit found that the record did not indicate that Cagnolatti interpreted the phrase "hitting a lick" to refer to only criminal activity.[93]  The Court continued that even if the jury could infer from the question and defense counsel's objection that Weiters had engaged in criminal activity, because defense counsel had interrupted the question, it could not determine whether the question related to discussions Weiters may have had with Cagnolatti about the Waveland or Grumpy's robberies or another robbery that would have resulted in improper "other crimes" evidence.[94]  The Court found that even if trial counsel's performance were deficient, Weiters had failed to show resulting prejudice.[95]  The Court relied on the evidence presented as well as the fact that the only "other crimes" evidence to which the State referred in its closing argument was the Waveland robbery.[96]  Finally, the Court noted that the trial court gave a limiting instruction regarding the limited purpose for which other crimes evidence could be considered.[97]

---

[91]*Id.*, at p. 328, ll. 25-27.

[92]*Id.*, at p. 328, l. 29.

[93]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *10; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 17-18, 6/13/12.

[94]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *10; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920 p. 18, 6/13/12.

[95]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *10; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, p. 18, 6/13/12.

[96]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *10; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 18-19, 6/13/12.

[97]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *10; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, p. 18, 6/13/12.

Weiters has failed to show prejudice resulting from his trial counsel's speaking objection. Cagnolatti had testified earlier that "hit a lick" could mean different things such as receiving money, winning big at a casino, or selling someone drugs.[98]  She conceded the phrase could refer to criminal activity, but stated, "not usually."[99]  Further, Weiters' counsel's objection interrupted the prosecution's question before the jury could determine what testimony the prosecution was trying to solicit from Cagnolatti.  Even if the jury could infer from Weiters' counsel's objection that Weiters engaged in some other criminal activity, the only robberies the prosecution referred to during its closing argument were the Waveland and Grumpy's robberies.  Additionally, the Trial Court gave a limiting instruction to the jury regarding the limited purposes for which "other crime" evidence could be used.  Finally, given the strength of the evidence against him, Weiters has not shown that the outcome of the proceedings would have been different but for his counsel's speaking objection.

Under these circumstances, Weiters has not shown that the state courts' decision to deny relief was unreasonable.  Accordingly, Weiters is not entitled to relief on this issue.

**C.    Stepro's Testimony**

Weiters argues that his trial counsel failed to object to testimony the State solicited on re-direct of Detective Stepro that Gilmore implicated Weiters in the Waveland robbery.  The State argues that the state courts' rejection of the argument was not unreasonable.

---

[98]St. Rec. Vol. 2 of 7, Trial Transcript, p. 327, ll. 12-15, 3/1/11.

[99]*Id.*, at p. 327, ll. 16-17.

Detective Stepro testified at trial about the investigation of the Waveland robbery. She testified that Gilmore had admitted to committing the robbery.[100] Stepro also testified that Detective Brown identified Weiters from still photographs taken from surveillance video of the Waveland robbery.[101] On re-direct, the prosecution asked Stepro, "Who did Mr. Gilmore name as the person robbing the store in Waveland with him?"[102] Stepro responded, "Rico," which is Weiters' nickname.[103]

The Louisiana First Circuit rejected Weiters' argument on direct appeal.[104] The Court explained that, other than pointing out that Gilmore had not testified, Weiters had not developed the argument.[105] It continued that even if trial counsel's failure to object to the testimony constituted deficient performance, Weiters failed to show a reasonable probability that the outcome of the trial would have been different.[106] The Court reasoned that Detective Stepro's testimony was merely cumulative because the jury had already learned that Weiters was the second perpetrator of the Waveland robbery through the testimony of Cagnolatti and Parks.[107]

---

[100]*Id.*, at p.307.

[101]*Id.*, at pp. 297-98, 299.

[102]*Id.*, at p. 309, ll. 17-18.

[103]*Id.*, at p. 309, ll. 19; Trial Transcript, p. 387, 3/2/11.

[104]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *9; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 16-18, 6/13/12.

[105]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *9; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 16, 6/13/12.

[106]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *9; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 16-17, 6/13/12.

[107]*Weiters*, No. 2011 KA, 1920, 2012 WL 2159209, at *9; St. Rec. Vol. 2 of 7, La. 1st Cir. Opinion, 2011 KA 1920, pp. 16-17, 6/13/12.

Assuming that the testimony was inadmissible and that Weiters' counsel was deficient in failing to object to it, Weiters is still not entitled to relief because he fails to demonstrate resulting prejudice. The State presented other strong evidence that Weiters committed the Waveland robbery. The evidence included photographs of Weiters in the Waveland store shortly before the robbery occurred as well as video of his vehicle across the street approximately fifteen minutes before the robbery.[108] Additionally, both Cagnolatti and Parks identified Weiters as one of the perpetrators of the Waveland robbery from photographs taken from surveillance video.[109] Parks identified the firearm used in the robbery as his.[110] Both Parks and Cagnolatti identified the coveralls.[111] In the overall context of the trial, the identification of Weiters attributed to Gilmore was not significant and was overwhelmed by the testimony of the other live witnesses who were cross-examined by Weiters' counsel. Therefore, even had defense counsel objected to the Stepro's testimony that Gilmore implicated Weiters in the Waveland robbery, there is not a reasonable probability that the outcome of the trial would have been different.

For these reasons, Weiters failed to establish that his counsel acted prejudicially in failing to object to Detective Stepro's testimony about the statement made by Gilmore. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*. Weiters is not entitled to relief on this claim.

---

[108]St. Rec. Vol. 2 of 7, Trial Transcript (continued), pp. 304, 306, 308, 322, 3/1/11; Trial Transcript, p. 374, 3/2/11.

[109]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 322, 3/1/11; Trial Transcript, p. 374, 3/2/11.

[110]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 369, 373, 3/2/11.

[111]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 315, 3/1/11; Trial Transcript, p. 374, 3/2/11.

### D.   Failure to Call Gilmore to Testify

Weiters contends that his counsel's failure to call Gilmore to testify in Weiters' defense denied him effective assistance of counsel.  He argues that Gilmore consistently maintained that he acted alone in the Grumpy's robbery and without Weiters' foreknowledge.  He continues that Gilmore's testimony would have established that Weiters lacked the requisite intent to be guilty as a principal.  The State responds that Weiters fails to submit any evidence regarding his trial counsel's reasons for not calling Gilmore to testify.  It further argues that Weiters has not established prejudice as there is no evidence that the jury would have believed Gilmore's testimony.

On the second day of trial, the defense made a request for Gilmore to be transported to court to testify.[112]  The prosecutor noted that if Gilmore failed to testify truthfully, she could move to vacate his sentence and have him resentenced.[113]  The prosecutor stated that Gilmore had previously stated in open court that Weiters made him commit the robbery.[114]  The prosecutor advised that, if Gilmore testified, she would call his attorney to testify regarding Gilmore's previous in court statements.[115]  On the third day of trial, the trial judge noted that Gilmore would be transported to court later that morning.[116]  Gilmore's counsel was present to advise him on his Fifth Amendment rights.[117]  The trial transcript does not reflect any further discussion with regard

---

[112]St. Rec. Vol. 2 of 7, Trial Transcript, p. 337, 3/2/11.

[113]St. Rec. Vol. 2 of 7, Trial Transcript (continued), p. 305, 3/1/11.

[114]*Id.*

[115]*Id.*

[116]St. Rec. Vol. 2 of 7, Trial Transcript, p. 337, 3/2/11.

[117]*Id.*, at pp. 337-38.

to the possibility of Gilmore testifying on behalf of the defense. It is therefore unclear whether Gilmore advised of his intention to invoke his right to the Fifth Amendment privilege against self-incrimination or whether Weiters' counsel made a tactical decision not to call Gilmore to testify.

"'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir.1997)).

Assuming, without deciding, that Gilmore was willing to testify, Weiters' counsel had a reasonable basis for not calling Gilmore to testify at trial. Gilmore had implicated Weiters in the Grumpy's robbery during either his guilty plea or sentencing hearing. Therefore, any trial testimony by Gilmore that Weiters was unaware of Gilmore's intention to rob Grumpy's convenience store would have been completely contrary to Gilmore's prior claim that Weiters made him commit the robbery. Had defense counsel presented Gilmore's testimony, she would have risked alienating the jury. Under the circumstances of the case and considering the Gilmore's previous statements, counsel's failure to call, or decision not to call, co-defendant Gilmore was well within the realm of reasonable performance and trial strategy. Furthermore, given Gilmore's questionable credibility, as addressed above, Weiters has not demonstrated that there is a

reasonable probability that Gilmore's testimony would have made a difference to the result of Weiters' trial.

Weiters has not established that counsel was deficient or prejudicial in this regard. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*. Weiters is not entitled to relief on this claim.

### E.    Negotiate a Plea Agreement

Weiters claims his counsel was ineffective in failing to negotiate a plea agreement. He claims that the State rejected his offer to plead guilty in a manner in which he would receive a five year sentence, but expressed a willingness to engage in further negotiations. Weiters claims he advised his counsel of his desire to avoid a trial but that counsel never advised him of what sentencing ranges might be acceptable to the State. The State responds that Weiters offers no evidence that the State would have agreed to recommend a more lenient sentence even if his counsel had resumed negotiations.

Weiters fails to establish details of what sort of plea agreement could have been obtained, and how counsel's failure to negotiate resulted in prejudice. See *Carter v. Cain*, Civ. Act. No. 07-3136, 2007 WL 4442346, at *10 (E.D. La. 2007) (Knowles, M.J.) ("Even if the Court were to assume that counsel refused to undertake plea negotiations on his client's behalf, and were further to assume that counsel therefore performed deficiently, petitioner still must show that he was prejudiced as a result."). Further, Weiters has consistently argued that he was unaware of Gilmore's intention to commit the robbery. While he now claims that he would have pled guilty to the robbery charge or some lesser offense, rather than go to trial, "courts have been skeptical of accepting a defendant's self-serving, post-conviction statements that he would have pleaded guilty

if properly advised of the consequences by his attorney." *Gluzman v. United States*, 124 F.Supp.2d 171, 177 (S.D.N.Y. 2000) (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir.1986)); *Lerma–Castillo v. United States*, Civ. Act. No. 08–106, 2009 WL 2914235, at *6 (W.D. Tex. Sep. 8, 2009).

Weiters has not demonstrated that counsel's actions fell below constitutional standards in connection with the failure to negotiate a plea agreement. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*. Weiters is not entitled to relief on this claim.

### F.    Failed to Object to Jury Instructions

Weiters claims that his attorney rendered ineffective assistance in failing to lodge any objection to the jury instructions which he contends failed to adequately articulate the burden of proof as to Weiters' intent. He appears to argue that the jury instruction on principals relieved the State of its burden of proof as to Weiters' specific intent to commit armed robbery. The State argues that any objection to the instructions would have been meritless because the state trial court instructed adequately instructed the jury about the intent requirement.

Weiters challenged the principal jury charge and, as outlined above, the Louisiana Supreme Court rejected the claim as procedurally barred. Nevertheless, in order to determine whether counsel should have objected, the Court must consider the propriety of the charge.

In order to determine whether the language of a jury charge amounts to a constitutional error, the Court must determine whether the instructions, when read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the principles set forth in *In re Winship*, 397 U.S. 358 (1970). *See Francis v. Franklin*, 471 U.S. 307,

(1985). In doing so, the Court must consider whether the specific language involved creates a constitutionally objectionable "mandatory presumption" or "merely a permissive inference" on an essential element of the crime. *Franklin*, 471 U.S. at 314.

The mere use of an erroneous instruction to the jury is not a basis for federal habeas relief. *Estelle*, 502 U.S. at 62. Instead, the Court must focus on "whether the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process." *Id.* at 72 (citations omitted). In examining the challenged instruction, the Court does not look at it in "artificial isolation," but must consider it in the "context of the instructions as a whole and the trial record." *Id.* Finally, when there is a question as to whether a jury instruction is ambiguous and violates due process by relieving the State of the burden of proof of an element of a crime, the question before the Court is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* (citations omitted); *accord Flowers v. Blackburn*, 779 F.2d 1115 (5th Cir.1986).

If the charge amounts to error, the Supreme Court has held that the error is subject to a harmless error analysis finding jury charge challenges to be trial error and not structural error. *California v. Roy*, 519 U.S. 2, 5–6 (1996) (citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The applicable test is whether the instruction "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Roy*, 519 U.S. at 6; *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Upon application, when a federal judge in a habeas proceeding is in grave doubt about whether trial error of federal constitutional law had substantial and injurious effect or influence in determining jury's verdict, that error is not harmless, and petitioner must be granted relief. *O'Neal*,

513 U.S. at 436.  Therefore, this Court on habeas review is required to determine whether the principal charge given in Weiters' case amounted to constitutional error.  Only if it did would the Court need to consider whether the error was harmless.

At the close of Weiters' trial, the Trial Court instructed the jury that they "must not single out any one of these instructions and disregard others."[118]  With this directive, the jury was charged that "the burden is on the State to prove the defendant's guilt beyond a reasonable doubt."[119]  With regard to principal, the state trial court instructed the jury as follows:

> All persons concerned in the commission of a crime are principals and are guilty of the crime charged if, whether presentor absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.[120]

That instruction is taken verbatim from La. Rev. Stat. § 14:24 and it is a proper instruction on the Louisiana law of principals with respect to the general intent crime of armed robbery.  *See State v. Buchanon*, 673 So. 2d 663, 668 (La. App. 1st Cir. 1996) (jury charge tracking § 14:24 was not erroneous).  However, the Louisiana Supreme Court has explained that "an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.... It is not enough to find merely that his coconspirator or accomplice had the necessary mental state, since this intent cannot be inferred to the accused."  *State v. Holmes*, 388 So.2d 722, 726 (La. 1980).

---

[118]St. Rec. Vol. 1 of 7, Jury Instructions, p. 1, 3/2/11; Vol. 2 of 7, Trial Transcript, p. 407, ll. 21-23, 3/2/11.

[119]St. Rec. Vol. 1 of 7, Jury Instructions, p. 1, 3/2/11; Vol. 2 of 7, Trial Transcript, p. 408, ll. 6-7, 3/2/11.

[120]St. Rec. Vol. 1 of 7, Jury Instructions, p. 4, 3/2/11; Vol. 2 of 7, Trial Transcript, pp. 412-13, 3/2/11.

The State Trial Court, however, also gave the jury instructions on criminal intent and burden of proof, and the elements of the offense of armed robbery.  In relevant part, the trial court charged the jury as follows:[121]

> As to criminal intent, it may be specific or general.  Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
> General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.  General criminal intent is always present when there is specific intent.
> Armed Robbery is a general intent crime.
> Whether criminal intent is present must be determined in light of ordinary experience.  Intent is a question of fact which may be inferred from the circumstances.  You may infer that the defendant intended the natural and probable consequences of his acts.

The Trial Court further instructed that the elements needed to prove Weiters was guilty:[122]

> Thus, in order to convict the defendant of armed robbery, you must find:
> 1) that the defendant himself or acting as a principal intentionally took something of value belonging to another; and
> 2) that the thing of value taken was in the possession or in the immediate control of Sharon Keith when it was taken; and
> 3) That the defendant himself or acting as a principal used force or intimidation against Sharon Keith in order to accomplish the taking; and
> 4) That the defendant himself or acting as a principal was armed with a dangerous weapon which was a firearm.

The principal charge quoted above did not direct the jury to infer or impute guilt to Weiters.  The charge instead instructed the jury to consider a person to be a principal only if he actually committed the crime (which requires proof of intent and other elements) or caused another to commit the crime (which requires proof of intent and other elements).  This charge did not contain

---

[121]St. Rec. Vol. 1 of 7, Jury Instructions, p. 3; Vol. 2 of 7, Trial Transcript, pp. 410-411, 3/2/11.

[122]St. Rec. Vol. 1 of 7, Jury Instructions, p. 5; Vol. 2 of 7, Trial Transcript, pp. 413-14, 3/2/11.

the burden-shifting language previously found objectionable and unconstitutional by the federal courts.  *See Flowers*, 779 F.2d at 1121–22.

The Trial Court's instructions were clear that Weiters must have the requisite specific intent to commit armed robbery.  Weiters has failed to demonstrate that the charge on the law of principals created an impermissible presumption of guilt or relieved the State of its burden of proof.  Having reached this conclusion, the Court cannot find that counsel was ineffective in his assistance when he did not object to the principal charge.  Weiters' counsel was not required to lodge an objection that had no legal basis.  *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir.1998).  Even if the charge had been questionable, there is no showing of a reasonable likelihood that the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637–38.  Counsel's failure to object was not the cause of prejudice nor did it have a prejudicial impact on the verdict.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.  Weiters is not entitled to relief on this claim.

### G.    Right to Testify

Weiters claims that his counsel refused to allow him to testify in his own defense and failed to advise Weiters that it was his decision to make.  He notes that the trial court failed to conduct a colloquy advising him of the right to testify and assuring the waiver of that right was knowing.  Weiters claims that had he been permitted to testify that he would have made it clear that he had no intent that an armed robbery would be committed and had no advance notice of Gilmore's intent to commit the robbery.  The State responds that Weiters' claim is unsubstantiated and the state courts' rejection of the claim is consistent with clearly established federal law.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir.2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir.2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir.1994). A defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary. *Bower*, 497 F.3d at 473 (citing *Emery*, 139 F.3d at 198). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir.1990), *reh'g granted*, 953 F.2d 1525 (11th Cir.), *cert. denied*, 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. It is not enough for a habeas petitioner to merely state that he told his trial attorney that he wanted to testify and that his attorney forbade him doing so. *Turcios v. Dretke*, Civ. Act. No. H–97–0515, 2005 WL 3263918, at *6 (S.D. Tex. 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475–76 (7th Cir.1991)); *see also*, *Davis v. Prince*, Civ. Act. No. 11–0712, 2011 WL 5878155, at *16 (E.D. La. Sept. 28, 2011) (Wilkinson, M.J.), *report and recommendation adopted*, Civ. Act. No. 11–0712, 2011 WL 5878152, at *1 (E.D. La. Nov. 23, 2011) (Feldman, J.); *Jones v. Cain*, Civ. Act. No. 10–213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, Civ. Act. No. H–06–3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007). The United States Seventh Circuit Court of Appeals in *Underwood* specifically noted the potential problems likely to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof. *Underwood*, 939 F.2d at 475–76. Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987), the *Underwood* Court recognized that such an assertion, even if made under oath was inadequate to meet that burden:

> ... this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Id.*, 939 F.2d at 475–76 (citations omitted); *accord Gross v. Knight*, 560 F.3d 668, 672 (7th Cir. 2009.

Citing *Underwood*, the United States Fifth Circuit Court of Appeals has also indicated the same concerns:

> Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic.   *See* [*Underwood*, 939 F.2d at 476] ... (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[I]t just is too facile a tactic to be allowed to succeed").   We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable."

*United States v. Martinez*, 181 F.3d 627, 628 (5th Cir.1999) (quoting *Underwood*, 939 F.2d at 475).

Weiters has not presented anything but his unsupported claim that his counsel would not allow him to testify.   The record also contains nothing to support his claim.   The transcript is devoid of any discussion on the record by Weiters or his counsel that Weiters wished to testify or was advised against it.   Weiters' argument, therefore, is in the same posture as that invalidated and rejected in the *Underwood* case.   There is nothing in this record sufficient to prove any violation of his right to testify.

Furthermore, even assuming that his counsel denied him of the right to testify, Weiters fails to show that there is a reasonable probability that his testimony would have altered the verdict.   On

the stand, Weiters would have been exposed to cross-examination regarding his guilt and character, including his prior criminal convictions of the type that resulted in his subsequent multiple offender adjudication, which would have diminished his credibility.  The prejudice posed by the likely cross-examination outweighed any benefit his unsubstantiated testimony could have lent to his defense.  For these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*.  Weiters is not entitled to relief on this claim.

### H.    Failure to Object to Improper Notice of Other Crimes Evidence

Weiters claims he "was denied effective assistance of counsel by receiving notice of the State's intent to use other crimes evidence at the commencement of the trial without proper notice to conduct an effective hearing."[123]  He continues, "Counsel for Petitioner was, in effect, ambushed and lacked the proper notice and ability to prepare for the hearing."[124]  In support of this claim, Weiters argues that the prosecution failed to present any evidence at the hearing and that the trial court failed to make a determination as to whether the prosecution had met its evidentiary burden to introduce the evidence.  The State argues that this claim alleges an error on the part of someone other than trial counsel and that the state courts' denial of relief as to this claim was reasonable.

The prosecution filed a notice of its intent to introduce evidence of other offenses on May 3, 2010.[125]  It filed a second notice of intent to use other crimes on February 28, 2011.[126]  According to that notice, the prosecution intended to introduce evidence of the Waveland robbery and a

---

[123]St. Rec. Vol. 5 of 7, Memorandum in Support of Post-Conviction Relief Application, p. 14, 12/23/14
[124]*Id*., at p. 15.
[125]St. Rec. Vol .1 of 7, Notice of Intent to Introduce Evidence of Other Offense, 5/3/2010.
[126]St. Rec. Vol. 1 of 7, Notice of State's Intent to Use Other Crimes, 2/28/11.

robbery of a gas station in Bay St. Louis.[127]  At a hearing on March 1, 2011, the prosecution advised of its intent to introduce evidence of only the Waveland robbery and proffered the evidence it intended to introduce.[128]  Weiters' trial counsel argued against the introduction of the evidence.[129] She argued that the prosecution had not met its burden of proof for admission of the evidence, and, further, the probative value of the evidence was outweighed by the prejudicial effect.[130]  The Trial Court found the evidence was admissible.[131]

Weiters has not addressed any failing by his trial counsel as it relates to this issue.  His trial counsel objected to the admission of the evidence.  Trial counsel gave a lengthy argument against the admission of the evidence.  When the Trial Court found the evidence admissible, Weiters' counsel asked for a limiting instruction.[132]  The fact that the objection was not successful does not amount to ineffective assistance of counsel.  For this reason, Weiters' claim is without factual basis and fails to establish counsel acted outside of the reasonable performance addressed under *Strickland*.

Weiters has not established that the state courts' denial of relief on this claim was contrary to, or an unreasonable application of *Strickland*.  Weiters is not entitled to habeas relief on this claim.

---

[127]*Id.*

[128]St. Rec. Vol. 1 of 7, Trial Transcript, pp. 207-08, 215-18, 3/1/11.

[129]*Id.*, at pp. 213-15, 218.

[130]*Id.*

[131]*Id.*, at pp. 218-20.

[132]*Id.*, at p. 220.

# I.    **Cumulative Errors**

Weiters' final claim of ineffective assistance of counsel, read broadly, is the combined errors of his counsel created cumulative prejudice thus entitling him to habeas relief.  The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.'"  *Perez v. Dretke*, 172 F. App'x 76, 81–82 (5th Cir. 2006) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992)).

However, in *Derden*, the Fifth Circuit held that "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"  *Derden*, 978 F.2d at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  Later, the Court further clarified when such errors may be considered:

> Under this doctrine, "errors of state law, including evidentiary errors, are not cognizable in habeas corpus."  [*Derden*, 978 F.2d] at 1458 (emphasis added). Instead, such errors are of the requisite constitutional nature only if they "infuse[ ] the trial with unfairness as to deny due process of law."  *Id*. (quoting [*Lisenba v. California*, 314 U.S. 219, 228 (1941) ] ).

*Perez*, 172 F. App'x at 82 (emphasis in original).

The *Perez* Court did not specifically address whether a federal habeas claim could be made for the accumulation of deficiencies in the performance of counsel under *Strickland*.  To evaluate such a claim, this Court must review the individual contentions of ineffective assistance, and if they are meritless, that result cannot be changed simply by asserting the same claims collectively. It is well settled that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."  *United States v. Hall*, 455 F.3d 508, 520 (5th Cir.2006) (citing

*Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010).  As the Fifth Circuit has noted with respect to analogous claims of cumulative error by counsel: "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir.1987).

The Court has reviewed each of the alleged errors of trial counsel.  None demonstrate an error in counsel's performance that could have caused any cumulative prejudicial effect.  *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden*, 978 F.2d at 1454, 1461) (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)).  Weiters has failed to establish that denial of relief on this issue, or any facet of his ineffective assistance of counsel claim, was contrary to, or an unreasonable application, of Supreme Court law, including but not limited to *Strickland*.

## IX.    Actual Innocence

Weiters' final claim for relief is that he is actually innocent of the crime of which he was convicted.  The State responds that Weiters' claim is not cognizable on federal habeas review.

The United States Supreme Court has not recognized any free-standing actual innocence claim to support habeas relief.  *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera*, 506 U.S. at 404-05); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013); *Burton v. Stephens*, 543 F. App'x 451, 458 (5th Cir.2013) (citing *McQuiggin*, 133 S.Ct. at 1931 and *Herrera*, 506 U.S. at 400); *In re Warren*, 537 F. App'x 457 (5th Cir.2013)..  The Court instead has recognized that a credible showing of actual innocence may act only as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim and allow for review of the merits.  *McQuiggin*, 133 S. Ct. at 1931; *see*, *Schlup*, 513 U.S. at 314-15 (distinguishing the novel constitutional claim based on actual innocence asserted in *Herrera* from a claim of actual innocence that can, in a "narrow class of cases," excuse procedural default).  Accordingly, since

there is no underlying constitutional violation in Weiters' claim, it is not cognizable and, therefore, he is not entitled to habeas relief.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Weiters' petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[133]

New Orleans, Louisiana, this 15th day of June, 2017

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[133]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.